UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 19-cr-20084
Hon. Matthew F. Leitman

v.

GARY DON LYNN JR.,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF #12)

Defendant Gary Don Lynn, Jr., is charged with possession of child pornography. He has filed a motion to suppress evidence obtained through searches conducted on October 13, 2017, and October 17, 2017. For the reasons explained below, the motion is DENIED.

## Findings of Fact

In connection with Lynn's motion to suppress, the Court held an evidentiary hearing over the course of two days. Based on the testimony given and other evidence presented at the evidentiary hearing, the Court makes the following findings of fact:

1. In 2012, Lynn pleaded guilty to Criminal Sexual Conduct, Third Degree, in the Genessee County Circuit Court. On October 26, 2012, that court sentenced Lynn to serve a term of imprisonment of 40 to 180 months.

2. On March 9, 2016, the Michigan Parole Board issued an order granting Lynn parole (the "Parole Order"). (*See* Gov't Hr'g Ex. 2, also included in record as ECF #27-3.)

3. The Parole Order imposed upon Lynn a variety of restrictive parole conditions. These conditions included a prohibition on out-of-state travel, a ban on associating with convicted felons, a requirement that he obtain employment and not change employment without the permission of his parole officer, and a requirement that he obtain permission from his parole officer before changing his residence. (*Id.* at p. 3, ECF #27-3 at Pg. ID 292.)

4. The Parole Order also imposed numerous "special conditions" on Lynn. One such condition required Lynn to consent to a search of his person and property on demand by a peace officer or parole officer. More specifically, Special Condition 4.2 of the Parole Order provided: "Written consent to search the parolee's person and/or property, MCL 791.236(19): I voluntarily consent to a search of my person and property upon demand by a peace officer or parole officer. If I do not sign this written consent, I understand that my parole may be rescinded or revoked." (*Id.* at p. 2, ECF #27-3 at Pg. ID 291.)

5. The statute referenced in Special Condition 4.2 of the Parole Order, MCL 791.236(19), provides:

> The parole order shall require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer. The written consent shall include the prisoner's name and date of birth, his or her physical description, the date for release on parole, and the ending date for that parole. The prisoner shall sign the written consent before being released on parole. The department shall promptly enter this condition of parole into the department's corrections management information system or offender management network information system or into a corresponding records management system that is accessible through the law enforcement information network. Consent to a search as provided under this subsection does not authorize a search that is conducted with the sole intent to intimidate or harass.

6. The Parole Order established March 15, 2016, as Lynn's parole date. On that date, prior to Lynn's actual release from prison, Lynn met with an employee of the Michigan Department of Corrections to discuss the terms of his parole. During that meeting, Lynn signed a document (the "First Acknowledgement") in which he (1) acknowledged that he had "read or heard the parole conditions and special conditions and [had] received a copy" and (2) "agree[d] to comply with the parole conditions and special conditions." (Gov't Hr'g Ex. 2 at p. 3, also included in record at ECF #27-3 at Pg. ID 292.)

7. After Lynn signed the First Acknowledgement, he was released from custody and went directly to his local parole office for a parole orientation meeting.

8. Parole officer Denise Dutoi conducted Lynn's parole orientation meeting.¹

9. During Lynn's parole orientation meeting, Dutoi reviewed with Lynn, among other things, his Parole Order and the special conditions of his parole that were listed in the order. Dutoi specifically reviewed with Lynn Special Condition 4.2. Lynn then placed his initials on the page of the Parole Order containing Special Condition 4.2. (Gov't Hr'g Ex. 1 at p. 2, also included in record at ECF #27-2 at Pg. ID 288.) And Lynn again signed a document (the "Second Acknowledgement") in which he (1) acknowledged that he had "read or heard the parole conditions and special conditions and [had] received a copy" and (2) "agree[d] to comply with the parole conditions and special conditions." (*Id.* at p. 3, ECF #27-2 at Pg. ID 289.)

10. In addition, during Lynn's parole orientation meeting, Dutoi advised Lynn that he was "subject to search without the need of a warrant at any time during the time that [he was] on parole." (5/16/19 Mot. to Suppress Hr'g Tr. at p. 49, ECF #24 at Pg. ID 166.) Dutoi also informed Lynn during the meeting that he would be subject to the Michigan Department of Corrections "Nighthawk" enhanced supervision program. (*See id.* at pp. 34–35, ECF #24 at Pg. ID 151–52.) That program involves unannounced visits by parole and law enforcement officers during

---

¹ Officer Dutoi's legal name is Denise Marie Curtis, but she goes by the name Denise Dutoi for work purposes.

weekend and evening hours. (*See id.* at p. 34, ECF #24 at Pg. ID 151.) Dutoi told Lynn that "when we do Nighthawk, we come out with law enforcement and that we search to make sure that [Lynn had] no items that violate the conditions of [his] parole." (*Id*. at pp. 34–35, ECF #24 at Pg. ID 151–52.)

11. During Lynn's two meetings with Michigan Department of Corrections employees on March 15, 2016 – i.e., his meeting at the prison immediately prior to his release on parole and his parole orientation meeting with Dutoi – all of Lynn's parole conditions, including Special Condition 4.2, were clearly expressed to Lynn. And in each of those meetings, Lynn acknowledged that he was aware that he was required to consent to searches by parole officers and peace officers "on demand."

12. On January 25, 2017, roughly nine months after Lynn began his parole term, a team consisting of parole officers and Michigan State Police Troopers conducted a compliance check and search of Lynn's mobile home/trailer. During the search, the State Troopers walked through Lynn's whole trailer. (*See* 7/11/19 Mot. to Suppress Hr'g Tr. at p. 8, ECF #25 at Pg. ID 250.) The search team did not find Lynn to be in possession of any contraband or items prohibited by his parole conditions. (*Id.*)

13. On October 13, 2017, a team of parole officers returned to Lynn's trailer to complete another compliance check and search. (*See id.* at p. 7, ECF #25 at Pg. ID 249.) When they arrived at the trailer, Lynn's supervising parole officer

knocked on the door and told Lynn that the team was there to complete a compliance search of his residence. (*See id.*) Lynn then invited the search team into the trailer, and the team members conducted the search. (*See id.* at pp. 7–8, ECF #25 at Pg. ID 249–50.)

14. During the October 13, 2017, search, the parole officers opened and examined, among other things, certain cupboards and drawers. (*See* 7/11/19 Mot. to Suppress Hr'g Tr. at pp. 58–59, 70, ECF #24 at Pg. ID 175–76, 188.) Parole Officer Jennifer Woychehoski found a computer thumb drive in a kitchen cupboard, and Woychehoski or another parole officer also found an item that was later identified as an SD Card (the type used to store photos taken on a digital camera). (*See id.* at pp. 56, 62, 67, ECF #24 at Pg. ID 173, 179, 184.)

15. Later, on October 17, 2017, Parole officer Danelle Pigott searched the thumb drive and determined that it contained multiple images that appeared to be child sexually abusive material. (*See* Aff. for Search Warrant at p. 2, ECF #12-2 at Pg. ID 62.)

16. Also on October 17, 2017, Officer Pigott and Agent Greenia returned to Lynn's home and seized a Smart TV. (*See id.* at p. 3, ECF #12-2 at Pg. ID 63.)

17. On October 20, 2017, Officer Pigott sought and obtained a search warrant authorizing her to search the thumb drive, SD card, and other items that had been seized from Lynn's trailer on October 13 and 17. (*See id.* at p. 5, ECF #12-2

at Pg. ID 65.) Officer Piggott thereafter conducted a forensic search of the thumb drive and SD card and found additional suspected child pornography on those devices.

## **Procedural History**

On February 20, 2019, a grand jury indicted Lynn on one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). (*See* Indictment, ECF #1.) The charges arise from Lynn's alleged possession of child pornography on the devices seized from his trailer on October 13 and October 17, 2017.

On April 3, 2019, Lynn filed a motion to suppress the evidence seized on October 13 and 17. (*See* Mot. to Suppress, ECF #12.) Lynn argues that the "warrantless searches and seizures on October 13, 2017 and October 17, 2017 (including the search of the devices) violated [his] constitutional rights because the searches were not conducted pursuant to a valid exception to the warrant requirement" and "were unreasonable under the circumstances." (*Id.* at p. 3, ECF #12 at Pg. ID 32.) The Government filed a response in opposition to the motion. (*See* Resp., ECF #15.) The Government argues that the warrantless searches were reasonable under the totality of the circumstances because (1) Lynn – as a parolee who had consented to a search of his property "on demand" – had a severely diminished expectation of privacy and (2) the State of Michigan had a legitimate

interest in searching Lynn to protect the public from his criminal activity. (*Id.* at p. 5, ECF #15 at Pg. ID 80.)

The Court held an evidentiary hearing on Lynn's motion. The Court began the hearing on May 16, 2019, and concluded it on July 11, 2019. The parties then filed post-hearing briefs. (*See* Supp. Brs., ECF ##26, 27.)

## Analysis

### A. The Warrantless Search of Lynn's Trailer Did Not Violate the Fourth Amendment

"The touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). In order "to determine whether a search is reasonable within the meaning of the Fourth Amendment," a federal court must "examine the totality of the circumstances." *Samson v. California*, 547 U.S. 843, 848 (2006). More specifically, a court must "assess[], on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id*. (quoting *Knights*, 534 U.S. at 118–19). The warrantless search of Lynn's trailer here was reasonable because (1) Lynn did not have a reasonable expectation of privacy in his trailer and (2) the State of Michigan had a substantial interest in searching the trailer.

To begin, Lynn's status as a parolee gave him "fewer expectations of privacy than" individuals not under supervision by the criminal justice system. *Id.* at 850.

Indeed, "[t]he essence of parole is release from prison, before completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). Where these mandatory "rules" broadly restrict a parolee's liberty – by, for instance, requiring him to submit to drug testing, limiting his travel and the persons with whom he may associate, and requiring him to update corrections officials concerning his whereabouts and residence – the parolee has "severely diminished expectations of privacy." *Id.* at 851–52. And where a parolee is subject to *both* these types of broad general rules restricting his liberty *and* a parole condition allowing corrections officials to conduct suspicionless searches of his property at any time, he has *no* legitimate expectation of privacy (so long as the search condition was clearly explained to him).

That is exactly what the Supreme Court held in *Samson*. *Samson* involved a suspicionless search of a California parolee. At the time of the search, the parolee was subject to a broad range of general parole conditions, including that he submit to drug testing, not affiliate with gang members, inform his parole officer of employment and residency changes, and not travel fifty miles from his home. *Id.* at 851. He was also subject to a special condition of parole allowing a parole officer or peace officer to search him "with or without a search warrant and with or without cause." *Id.* at 846 (quoting Cal. Penal Code Ann. § 3067(a) (West 2000)). This

9

search condition, which had been clearly explained to the parolee when he commenced parole, required him to "submit to suspicionless searches by a parole or peace officer 'at any time.'" *Id.* at 852 (quoting Cal. Penal Code Ann. § 3067(a)). The Supreme Court held that, under all of these circumstances, the parolee "did not have an expectation of privacy that society would recognize as legitimate." *Id.*

Like the parolee in *Samson*, Lynn lacked any reasonable expectation of privacy in his premises. He was bound by a broad range of restrictive parole conditions, and he was subject to a special parole condition requiring him to consent to a search by a peace officer or parole officer "on demand." Moreover, he was informed of that search condition – and he signed a form agreeing to consent to a search "on demand" – when he began his parole term. *Samson* makes clear that, on these facts, Lynn "did not have an expectation of privacy that society would recognize as legitimate." *Id.*

*Samson* controls here even though the language of the special search condition in that case differed from the language of the search condition in the Parole Order. As noted above, the special condition in *Samson* compelled the parolee to submit to a search "with or without cause," whereas the special search condition in the Parole Order required Lynn to submit to a search "on demand." But these two standards are not meaningfully different. Indeed, nothing in the Parole Order suggests that a peace officer or parole officer could demand that Lynn submit to a search only if the

10

officer had some sort of cause or suspicion to conduct the search. Thus, as numerous courts have concluded, the search "on demand" condition referenced in the Parole Order need not be supported by any particular suspicion or cause. *See, e.g.*, *Dixon v. Kraft*, No. 16-14439, 2018 WL 636243 (E.D. Mich. Jan. 31, 2018) (adopting a report and recommendation that treated a search "on demand" condition – identical to that in Lynn's Parole Order – as authorizing a "suspicionless" search); *United States v. Mann*, No. 17-20644, 2018 WL 3036404, at *14 (E.D. Mich. June 19, 2018) (treating a search "on demand" condition as authorizing a "suspicionless" search); *People v. Merchant*, No. 335506, 2017 WL 5503791, at * 1 (Mich. Ct. App. Nov. 16, 2017) (same).

While Lynn lacked an expectation of privacy, the State of Michigan had a "substantial" interest in closely supervising Lynn and monitoring his private activity. *Samson*, 547 U.S. at 853. In fact, the Supreme Court "has repeatedly acknowledged that a State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.'" *Id.* (quoting *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998)). And the Supreme Court has likewise "repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* (citations omitted).

In sum, given the State of Michigan's strong interest in monitoring Lynn's behavior and Lynn's lack of a reasonable expectation of privacy in his trailer, the warrantless search of the trailer did not violate Lynn's Fourth Amendment rights.

**B.     Lynn's Counterarguments Do Not Warrant Suppression**

Lynn advances three primary arguments in favor of suppression, but those arguments do not persuade the Court to suppress the evidence seized from his trailer. First, Lynn argues that the Court should evaluate the lawfulness of the search here under the Supreme Court's decision in *Griffin v. Wisconsin*, 483 U.S. 868 (1987), rather than under *Samson* and *Knights*. In *Griffin*, the Supreme Court "assessed the validity of a search conducted pursuant to a state regulation permitting a warrantless search of a probationer's home where a probation officer had 'reasonable grounds' to believe that the probationer was in possession of contraband." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007) (describing *Griffin*). The Supreme Court "concluded that supervision of probationers constituted a 'special need' justifying a comparatively greater intrusion on the privacy of [probationers]." *Id.* at 687–88 (quoting *Griffin*, 483 U.S. at 875). And the Supreme Court "deemed the search of the [probationer's] residence reasonable . . . 'because it was conducted pursuant to a valid regulation governing probationers,' that is, a regulation that independently satisfied the Fourth Amendment's reasonableness requirement." *Id.* (quoting *Griffin*, 483 U.S. at 873 & 880). "In applying *Griffin*, the Sixth Circuit has

formulated a two-pronged inquiry that calls for (1) an examination of the validity of the relevant provision authorizing a search and (2) a determination of whether the search complied with the applicable provision." *Id*. at 688–89.

Lynn says that he is entitled to suppression under *Griffin* because the search of his trailer did not comply with a Michigan administrative rule concerning parolee searches. That rule, Mich. Admin. Code R. 791.7735, provides:

> (1) A parole agent may conduct a warrantless search of a parolee's person or property under any of the following circumstances:
>
> > (a) Incident to a lawful arrest pursuant to section 39 of Act No. 232 of the Public Acts of 1953, as amended, being S791.239 of the Michigan Compiled Laws.
> >
> > (b) A stop and frisk, if there is reasonable cause to believe that the parolee is presently involved in criminal conduct, has violated a condition of parole, or is carrying a weapon.
> >
> > (c) Seizure of evidence or contraband in plain view.
> >
> > (d) With the consent of the parolee or a third party having mutual control over the property to be searched.
>
> (2) Where none of the circumstances specified in subrule (1) of this rule are present and there is reasonable cause to believe that a violation of parole exists, a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized.

13

Lynn insists that this rule did not authorize the search of his trailer because there was no "reasonable cause to believe" that he had violated his parole conditions and because none of the other criteria in the rule permitting a search were satisfied. Lynn contends that *Griffin* thus requires suppression of the evidence seized from his trailer.

But the *Griffin* framework "is ill-fitted to the present case." *Herndon*, 501 F.3d at 688. *Griffin* "govern[s] [the Fourth Amendment] inquiry" where a "search [is] made pursuant to a state policy." *United States v. Tessier*, 814 F.3d 432, 433 & n.1 (6th Cir. 2016). In contrast, the "totality-of-the-circumstances test" from *Knights* and *Samson* "governs [the] inquiry" where a "search [is] made pursuant to a condition of probation" or parole. *Id.* (applying the *Knights/Samson* reasonableness test to search of probationer made pursuant to a probation condition); *Herndon*, 501 F.3d at 689–90 (same). Here, parole agents searched Lynn's trailer based upon his parole condition requiring him to consent to searches "on demand." They did not conduct the search pursuant to their authority under the administrative rule. Thus, the *Knights*/*Samson* totality of the circumstances test is a better fit, and, for all of the reasons explained above, the search was reasonable under that test. Moreover, the Sixth Circuit has explained that a search pursuant to a parole condition "may be validated under the more general Fourth Amendment totality of the circumstances approach outlined in *Knights*" and *Samson* even where the search "may not be

justified as a special needs search under *Griffin*." *Herndon*, 501 F.3d at 689. Thus, even if Lynn is correct that the search of his trailer did not satisfy the *Griffin* test (an issue the Court does not reach), suppression would nonetheless be inappropriate because the search did satisfy the *Knights/Samson* test. For all of these reasons, Lynn is not entitled to suppression under the *Griffin* framework.[2]

Second, Lynn argues that a search of a parolee always requires reasonable suspicion – even where the search is conducted pursuant to a parole search condition. In Lynn's words, "the reasonable suspicion requirement survived *Samson*." (Mot. to Suppress at p. 13, ECF #12 at Pg. ID 42.) Lynn is incorrect. The Supreme Court in *Samson* expressly declined to require that every search of a parolee be supported by

---

[2] The role of Mich. Admin. Rule 791.7735, if any, under current Michigan law is not clear in light of MCL 791.236(19), the Michigan statute quoted above that provides that every Michigan "parole order shall require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer." The administrative rule seems to conflict with the statute, because the rule gives parolees a far greater expectation of privacy than the statute. Given that conflict, the statute controls. *See Grass Lake Improvement Bd. v. Dep't of Envtl. Quality*, 891 N.W.2d 884, 890 (Mich. Ct. App. 2016) (explaining that "when a statute and an administrative rule conflict, the statute necessarily controls"). It may be that the rule applies to parolees who began parole before the statute became effective in 2013. *See, e.g.*, *United States v. Mills*, No. 13-cv-20334, 2013 WL 5954495, at *3 (E.D. Mich. Nov. 7, 2013) (applying the rule to a parolee who began parole in 1994, long before MCL 791.236(19) became effective in 2013). Or it may be that the rule applies where the special search condition is inadvertently omitted from a parole order. Finally, it may be that the Department of Corrections inadvertently failed to eliminate the rule after the enactment of MCL 791.236(19). The Court need not resolve the uncertainty created by the rule because, for the reasons explained above, the search of Lynn's trailer was lawful under the *Knights/Samson* test irrespective of whether the search complied with the rule.

15

reasonable suspicion. *Samson*, 547 U.S. at 854–55. Indeed, *Samson* makes clear that reasonable suspicion is *not* required where, as here, a parolee is subject to a condition authorizing a suspicionless search (and where the condition has been clearly expressed to the parolee). *See also Tessier*, 814 F.3d at 433–35 (upholding suspicionless search of probationer whose probation order contained a provision authorizing a search without reasonable suspicion).

Lynn cites three cases in support of his argument that even after *Samson* the search of his trailer required reasonable suspicion, but the cited cases do not stand for that proposition. Lynn first directs the Court to *United States v. Rivera*, 727 F. Supp. 2d 367 (E.D. Pa. 2010). In that case, the court addressed a search of a parolee under a search condition imposed by Pennsylvania law. In sharp contrast to the special search condition in the Parole Order, the search condition in *Rivera* (as interpreted by the United States Court of Appeals for the Third Circuit) required that any search of a parolee be based upon reasonable suspicion. *Id*. at 372–76. Because the Pennsylvania search condition itself required reasonable suspicion, the court in *Rivera* had no need to decide, and did not decide, whether the Fourth Amendment requires that every search of a parolee be supported by reasonable suspicion.

Lynn next cites *United States v. Doxey*, 833 F.3d 692 (6th Cir. 2016), and *United States v. Mills*, No. 13-cv-20334, 2013 WL 5954495 (E.D. Mich. Nov. 7, 2013). But those cases are also distinguishable. The Michigan parolees in *Doxey*

and *Mills* were not subject to the special search condition in the Parole Order; their parole orders did not require them to consent to a search "on demand." Thus, the courts in those cases did not address whether a search made under the Parole Order's special condition requires reasonable suspicion. In short, Lynn has not cited any post-*Samson* case holding that a search of a Michigan parolee under a special search condition like the one in the Parole Order requires reasonable suspicion.

Finally, Lynn appears to argue that the search of his trailer was not lawful because he was not aware of the special search condition in the Parole Order. At the evidentiary hearing, he testified that he had never focused on that condition and that he could not recall whether the parole officers had specifically reviewed the condition with him. (*See* 5/16/19 Mot. to Suppress Hr'g Tr. at pp. 80–83, ECF #24 at Pg. ID 198–200). However, as noted above, the Court has found as a matter of fact that the parole officers did review the condition with Lynn and that Lynn acknowledged the condition. Accordingly, the Court rejects any contention by Lynn that the search here was invalid because he was unaware of the special search condition. *See Samson*, 547 U.S. at 852 (upholding search of parolee pursuant to search condition that was "clearly expressed" to parolee).[3]

---

[3] Lynn also argues in the alternative that "even if the Court finds he was aware of this special [search] condition and consented to it, his consent was not voluntary." (Mot. to Suppress at p. 16, ECF #12 at Pg. ID 45.) "Because [the Court] find[s] that the search at issue here [was] reasonable under [the Supreme Court's] general Fourth Amendment approach," the Court "need not reach the issue whether" the search may

## Conclusion

For all of the reasons explained above, Lynn's motion to suppress is DENIED.

**IT IS SO ORDERED.**

                                            s/Matthew F. Leitman
                                            MATTHEW F. LEITMAN
                                            UNITED STATES DISTRICT JUDGE

Dated: September 4, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 4, 2019, by electronic means and/or ordinary mail.

                                            s/Holly A. Monda
                                            Case Manager
                                            (810) 341-9764

---

be upheld on the basis that Lynn voluntarily consented to it. *Samson*, 547 U.S. at 852 n.3 (declining to reach consent issue).